IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

EARL FERGERSON and BETTY
FERGERSON,                                              :

    Plaintiffs,                                    :

vs.                                                     :            CA 2:11-549-KD-C

TENNESSEE AMERICAN RECYCLING,
LLC, INTERNATIONAL PAPER
COMPANY, FIRST FLEET, INC., and
RBX, INC. d/b/a RBX
TRANSPORTATION, INC.,                                   :

    Defendants.                                    :

## REPORT AND RECOMMENDATION

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on the plaintiffs' motion to remand this matter to the Circuit Court of Wilcox County, Alabama and memorandum of law in support (Docs. 5 & 6), both filed October 1, 2011; defendant First Fleet, Inc.'s response (Doc. 23), filed October 17, 2011; and the plaintiffs' reply to that response (Doc. 27), filed October 21, 2011. At the request of First Fleet (*see* Doc. 23 at 11), oral argument was held on this matter on November 17, 2011 in Selma, Alabama (*see* Doc. 28, order setting same). After careful consideration of the parties' briefing and the presentations made before the Court on November 17, 2011, it is **RECOMMENDED** that the motion be **GRANTED**, and that this matter be **REMANDED** to the Circuit Court of Wilcox County, Alabama.

## Background[1]

At its core—at least for present purposes—this case is simply about whether it is **possible** that the plaintiffs can establish a cause of action against defendant RBX. But the underlying action concerns an accident that occurred on August 11, 2010 in Pine Hill, Alabama, when plaintiff Earl Fergerson—a Missouri resident operating under a contract with RBX to transport one of its trailers improperly loaded, by defendant Tennessee American, with bales of scrap cardboard to defendant International Paper—was, after being instructed by defendant First Fleet regarding the unloading of the trailer, injured when he opened the trailer door and a bale of corrugated cardboard fell, striking the door, and knocking him to the ground. Mr. Fergerson and his wife filed a lawsuit in the Circuit Court of Wilcox County, Alabama on August 11, 2011, in which they assert negligence claims against all defendants.

Defendant First Fleet timely removed this case to this Court on the basis of diversity, alleging that the plaintiffs fraudulently joined RBX, a Missouri corporation, to defeat this Court's jurisdiction because, under either Alabama or Missouri law, "it is clear that the remedies available against RBX, under these circumstances, are limited to actions for workers' compensation benefits." (Doc. 1, notice of removal, ¶ 4.) In their motion to remand, the plaintiffs argue that relief pursuant to the applicable workers'

---

[1] Because the decision of whether or not to grant the motion to remand turns on the issue of fraudulent joinder, this Court must "resolve all questions of fact . . . in favor of the plaintiff[s,]" *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989), and as such, the Court will accept their version of the facts underlying the lawsuit.

compensation statutes is not available to Mr. Fergerson because, first, under the Alabama statute and cases interpreting that statute, RBX is excluded from the definition of an employer, *see* ALA. CODE § 25-5-1 ("in no event shall a common carrier by motor vehicle operating pursuant to a certificate of public convenience and necessity be deemed the 'employer' of a lease-operator or owner-operator of a motor vehicle or vehicle under contract to the common carrier"), and second, under the Missouri statute and cases interpreting that statute, Mr. Fergerson is excluded from the definition of an employee, *see* MO. REV. STAT. § 287.020 ("The word 'employee' shall not include an individual who is the owner . . . and operator of a motor vehicle which is leased or contracted with a driver to a for-hire motor carrier operating within [statutorily-defined] the commercial zone . . . or operating under a certificate issued by the Missouri Department of Transportation or by the United States Department of Transportation, or any of its subagencies."). (*See* Doc. 6 at 4-12.) In response, First Fleet **ignores** the statutory definitions Mr. Fergerson points to and, instead, contends, first, that "the relationship between RBX and Fergerson satisfies the elements necessary to form an employer-employee relationship," and moreover, "Ferguson [sic] is contractually prohibited from pursuing an action against RBX based on the relevant employment/lease agreement" (Doc. 23, ¶ 6.); an unauthenticated version of the purported lease agreement is attached to the response (*see id* at 14-23). On reply, the plaintiffs argue that the applicable provision of the agreement First Fleet relies

3

on—paragraph 10—does not require Mr. Fergerson to indemnify RBX for RBX's own negligence, under either Missouri or Alabama law. (*See generally* Doc. 27.)

## Discussion

1. Diversity Jurisdiction and Removal.

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). And a federal court may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). Nevertheless, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *cf. D.M.C. Enters. Inc. v. Best McAllister, LLC*, Civil Action No. 10-00153-CB-N, 2010 WL 3039477, at *2 (S.D. Ala. Aug. 4, 2010) ("Because it is conferred by statute, the right of removal is strictly construed to limit federal jurisdiction.") (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)).

Therefore, a removing defendant (here, First Fleet) must establish the propriety of removal under section 1441 and, for that reason, "bears the burden of establishing the existence of federal jurisdiction." *Brown v. Kabco Builders, Inc.*, Civil Action

4

07-0099-WS-C, 2007 WL 841690, at *1 (S.D. Ala. Mar. 15, 2007) (citing *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002)). Here, the burden is on First Fleet to establish both complete diversity—that is, the plaintiffs are diverse from every defendant, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citation omitted)—and that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement. *See Fitzgerald v. Besam Automated Entrance Sys.*, 282 F. Supp. 2d 1309, 1314 (S.D. Ala. 2003). Because it does not appear that the amount in controversy requirement is being challenged, the Court's primary concern appears to be complete diversity.

2. <u>The Fraudulent Joinder Standard</u>.

A removing defendant can establish complete diversity of citizenship by proving that the non-diverse defendant, purportedly a resident of the same state as the plaintiff, has been fraudulently joined in an effort by a plaintiff to defeat federal diversity jurisdiction. *See Tapscott*, 77 F.3d at 1359 ("An action may nevertheless be removable if the joinder of non-diverse parties is fraudulent."); *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1117 (M.D. Ala. 1996) ("The citizenship of a resident defendant fraudulently joined should not be considered by a court for the purpose of determining diversity jurisdiction."). A removing defendant's burden in this regard is "a heavy one." *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). In *Henderson v. Washington National Insurance Co.*, 454 F.3d 1278, (11th Cir. 2006), the Eleventh Circuit set forth the following standard of review:

5

> When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a "fraudulent joinder," *see Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), and a federal court may appropriately assert its removal diversity jurisdiction over the case. A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause of action against the [non-diverse or] resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id.* The defendant must make such a showing by clear and convincing evidence. *See Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962).

*Id.* at 1281 (footnotes omitted).

   3.   <u>The Court's Fraudulent Joinder Inquiry</u>.

In the context of fraudulent joinder, the Court is required to both evaluate the parties' factual allegations and submissions in the light most favorable to a plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiffs. *See Crowe*, 113 F.3d at 1538. And although the determination of whether a non-diverse defendant has been fraudulently joined "should be made based upon the plaintiff's pleadings at the time of removal," *Cabalceta*, 883 F.2d at 1561 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)), a district court "can consider any submitted affidavits and/or deposition transcripts," *id.* (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) ("Both parties may submit affidavits and deposition transcripts.") (citing, in turn, *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. Unit A Dec. 1981)), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993)). Given these parameters, some courts have analogized the analysis used to

6

resolve a claim of fraudulent joinder to that applied to a motion for summary judgment under Rule 56(b). *See Crowe*, 113 F.3d at 1538.

> However, while the analysis is similar, "the jurisdictional inquiry 'must not subsume substantive determination' . . . [and w]hen considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538. This court's authority to assess the "ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims" and it should not attempt to determine "the merits of cases that do not appear readily to be frivolous or fraudulent." *Id.* at 1541-42.

*Atwood v. Weyerhaeuser USA, Inc.*, Civil Action No. 09-0379-CG-N, 2010 WL 749337, at *5 (S.D. Ala. Feb. 26, 2010) (order adopting report & recommendation of Magistrate Judge); *see id.* at *6 (describing the inquiry into the plaintiffs' claims for purposes of fraudulent joinder as "basic"—"The court must merely decide whether the defendants have shown by clear and convincing evidence that no Alabama court could find plaintiffs' complaint[, as supplemented by their] affidavit[,] sufficient to invoke claims for nuisance, negligence, wantonness and trespass."); *Triggs*, 154 F.3d at 1287 ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a **possibility** of stating a valid cause of action in order for the joinder to be legitimate.") (emphasis in original).[2]

---

[2] While some courts have described this process as "piercing the pleadings," a court conducting a fraudulent joinder analysis has no business making evidentiary determinations. *Compare Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) ("[I]n testing for fraudulent joinder the district court in its discretion may 'pierce the pleadings,' albeit in so doing the court should not conduct an evidentiary hearing but, based on appropriate documentation in addition to the pleadings, should instead

4. <u>Analysis</u>.

In its removal of this matter and in its present effort to avoid remand, First Fleet relies heavily on a purported lease agreement between Mr. Fergerson and RBX, which it attempts to use to establish that RBX was actually Mr. Fergerson's employer (*see* Doc. 23, ¶¶ 8-14) or, alternatively, Mr. Fergerson has contractually waived his right to bring any lawsuit against RBX for RBX's own negligence (*see id.*, ¶¶ 15 & 16). Even if the Court accepts that the unauthenticated purported lease agreement is "appropriate documentation in addition to the pleadings" for a fraudulent joinder analysis,[3] *see*

---

resolve all disputed questions of fact in favor of the plaintiff."), *with In re Briscoe*, 448 F.3d 201, 218 (3d Cir. 2006) ("Assuming a district court can 'pierce the pleadings' to determine whether a plaintiff has asserted a colorable claim against the non-diverse defendant, 'that inquiry is far different from the summary judgment type inquiry made by the district court here.' The district court, 'in the guise of deciding whether the joinder was fraudulent, stepped from the threshold jurisdictional issue into a decision on the merits,' and because the dispositive defense based on the release was raised by all three defendants, it was impermissible for the district court to reach the merits of that defense in deciding the fraudulent joinder question. We concluded that 'where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses.' Such a determination must be left to the state court.") (discussing and quoting its previous decision in *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112-13 (3d Cir. 1990)) (internal citations omitted); *see also Eckhart v. DePuy Orthopaedics, Inc.*, Case No. 2:03-cv-1063, 2004 WL 524916, at *2-4 (S.D. Ohio Mar. 3, 2004) ("Because a factual attack on the well-pleaded allegations of the plaintiff's complaint resembles an effort to obtain summary judgment on the merits, courts have struggled with the appropriate legal standard to be applied in such a situation.").

[3] This Court has located implicit—nonbinding—authority for the proposition that a district court may consider evidence other than "affidavits and/or deposition transcripts," *Cabalceta*, 883 F.2d at 1561, in its fraudulent joinder analysis, **but** this evidence should be authenticated. The purported lease agreement is not. *See Chauvin v. Ingram Barge Co.*, Civil Action No. 08-1593, 2008 WL 4470074, at *5 (E.D. La.

8

*Burden*, 60 F.3d at 217, First Fleet has failed to meet its—admittedly, heavy—burden to clearly and convincingly prove that "there is no possibility the plaintiff[s] can establish a cause of action against [RBX.]" *Henderson*, 454 F.3d at 1281 (quoting *Crowe*, 113 F.3d at 1538).

First Fleet would first like the Court to ignore the statutory definitions that, at a minimum, cast doubt on whether an employer-employee relationship existed between RBX and Mr. Fergerson at the time of the accident, and instead view the purported lease agreement "in light of [ ] elements [used by Alabama and Missouri courts to] determin[e] whether an employer-employee relationship exists[.]" (Doc. 23, ¶ 8 (further noting: "Although this document was intended to serve as an independent

---

Oct. 1, 2008) (granting motion to remand after concluding that Jones Act causes of action could not be removed) ("[T]he Court cannot consider documents that Ashton Marine submits to demonstrate plaintiff's receipt of LHWCA benefits and supplemental claim for additional compensation because the documents are neither authenticated nor attached to sworn affidavits.") (citing, *inter alia*, *Miller Brewing*, 663 F.2d at 549); *Salvaggio v. Safeco Prop. & Cas. Ins. Co.*, 458 F. Supp. 2d 283, 288 n.3 (E.D. La. 2006) ("GICA attaches to its opposition motion what purports to be the Portfolio Security Policy that provides certain coverage to properties secured by mortgages held by a lending institution where the borrowers or mortgagors fail to insure their property. The Court acknowledges that the scope of the improper joinder inquiry may go beyond to pleadings to include summary judgment-type evidence, but GICA's unsworn submission does not qualify. Unsworn documents that are not properly authenticated are incompetent summary judgment evidence. . . . Accordingly, because it is incompetent summary judgment evidence, the Court cannot 'pierce the pleadings' to determine whether the plaintiffs have a basis in fact for their claims.") (citations omitted); *Meyers v. Texas Health Res.*, Civil Action No. 3:09-CV-1402-D, 2009 WL 3756323, at *4 & n.7 (N.D. Tex. Nov. 9, 2009) ("In response to Meyers' contention that the Plan document submitted with its pleadings is not authenticated, Texas Health has provided a notarized affidavit from its Chief Human Resources Officer that confirms that the document is an accurate copy.").

9

contractor agreement, simply labeling it as such, as a matter of law, does not make it so. Rather, the substance and terms of the agreement, rather than the title, must be examined and scrutinized.").) Alternatively, First Fleet would like the Court to view the purported lease agreement "itself as a bar to all tort claims that could potentially be brought by Ferguson [sic] against RBX." (*Id.*, ¶ 15; *see id.*, ¶ 16 ("[B]ased on the clear and unambiguous language of the contract, Ferguson [sic] cannot sue RBX under any theory of negligence[.]").) And First Fleet may have the winning argument as to both. But those determinations should not be made by this Court at this time.

To the extent First Fleet pins its hopes on a disputed issue of state substantive law,[4] in the context of fraudulent joinder, this Court must resolve all uncertainties in favor of the plaintiffs. *See Crowe*, 113 F.3d at 1538. To the extent, moreover, that **either** the provisions of the purported lease agreement **or** the exclusivity of the workers' compensation scheme are affirmative defenses to the claims asserted by the plaintiffs, those determinations are outside the "basic" tasks now before the Court. *Cf. Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010) ("Our ruling that Hamilton has adequately alleged employee status is in no way intended to signal that he will ultimately recover on his claim of employer negligence. To prevail, he must prove every element of that claim, including employee status, and he will no doubt need to defeat an affirmative defense

---

[4] The plaintiffs have, at the very least, raised serious doubts in the mind of the undersigned regarding the availability of workers' compensation benefits, whether in Missouri or Alabama, to Mr. Fergerson.

that the Missouri workers' compensation statute provides the exclusive remedy for his injuries.") (citing MO. REV. STAT. § 287.120(2); *McCracken v. Wal-Mart Stores East, LP*, 298 S.W.3d 473, 479 (Mo. 2009) (recognizing that workers' compensation exclusivity is an affirmative defense that may not be raised in a motion to dismiss)); *In re Briscoe*, 448 F.3d at 218 ("We concluded that where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses. Such a determination must be left to the state court.") (citation and internal quotation marks omitted).

## Conclusion

After careful consideration of the parties' briefing and the presentations made before the Court on November 17, 2011 and for the reasons set forth above—put succulently, First Fleet has failed to show by clear and convincing evidence that, when the evidence is viewed in the light most favorable to the plaintiffs and the Court resolves all uncertainties of state law in the plaintiffs' favor, there is no possibility that the Circuit Court could find that the plaintiffs' complaint states a claim against RBX—it is **RECOMMENDED** that the motion (Doc. 5) be **GRANTED**, and that this matter be **REMANDED** to the Circuit Court of Wilcox County, Alabama.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

11

**DONE** this the 2nd day of December, 2011.

                                                    s/WILLIAM E. CASSADY
                                                    **UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[5]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED. R. CIV. P. 72(b)(2).